# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| LEON OPIACHA, | Case No. 20-CV-1046 (DSD/KMM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| DEPARTMENT OF HUMAN SERVICES, | |
| Respondent. | |

This action comes before the Court on Petitioner Leon Opiacha's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 7 ("Petition"). For the following reasons, the Court recommends denying the Petition and not issuing Mr. Opiacha a certificate of appealability ("COA").

## I.    BACKGROUND

### A.    Minn. Stat. §§ 253B.18 and 253B.19

Mr. Opiacha is presently confined at the Minnesota Security Hospital ("MSH"). *See* Pet. 1; Resp't's Answer to Pet. for Writ of Habeas Corpus 4, ECF No. 11 ("Answer"). He is confined due to court determinations that he has a mental illness and is dangerous to the public. *See generally* Ans. 4–12. Understanding the Minnesota statutes governing such determinations—specifically, Minn. Stat. §§ 253B.18 and 253B.19—will help readers follow the analysis below.[1]

---

[1] As discussed below, authorities first assessed Mr. Opiacha for having a mental illness and being dangerous to the public in August 2013. Between August 2013 and the present,

Under § 253B.18, subd. 1(a), if authorities file a petition asserting that someone has a mental illness and is dangerous to the public,[2] a state court shall hear the petition. "If the court finds by clear and convincing evidence that the proposed patient is a person who has a mental illness and is dangerous to the public, it shall commit the person to a secure treatment facility . . . ." *Id.* After admission, a patient's treatment begins immediately, and the facility must file a "written treatment report" with the "committing court." *Id.* subd. 1(b).

Once the committing court gets the report, the court "shall hold a hearing to make a final determination as to whether the patient should remain committed as a person who has a mental illness and is dangerous to the public." *Id.* subd. 2(a). "If the court finds at the final determination hearing . . . that the patient continues to be a person who has a mental illness and is dangerous to the public, then the court shall order commitment of the proposed patient for an indeterminate period of time." *Id.* subd. 3. Once indeterminately committed, a patient can "be transferred, provisionally discharged or discharged, only as provided" in § 253B.18. *Id.*

---

the Minnesota Legislature has amended § 253B.18 several times and amended § 253B.19 once. The following discussion cites and quotes the statutes' present versions. Unless otherwise noted, the provisions governing Mr. Opiacha's past proceedings were identical to the present versions.

[2]  Legislation effective August 1, 2020, changed the terms used throughout §§ 253B.18 and 253B.19. Before the change, the statutes referred to people who are "mentally ill and dangerous to the public"; after it, they referred to people who "have a mental illness and are dangerous to the public." *See, e.g.*, Act of June 18, 2020, 2020 Minn. Sess. Law Serv. 1st Sp. Sess. ch. 2, § 82 (West). As far as the Court is aware, this change did not alter any substantive standards—i.e., anyone deemed "mentally ill" before the change would be deemed to "have a mental illness" after it.

Subdivision 4(c) of § 253B.18 creates a special review board ("SRB") to address "all petitions for a reduction in custody," a term covering "transfer from a secure treatment facility, discharge, and provisional discharge."[3] Under subdivision 5(a), a patient can file such petitions with the commissioner of corrections, and the commissioner has these heard by the SRB. Subdivision 5(a) limits how often a patient can file such petitions: "A patient may not petition . . . for six months following commitment under subdivision 3 or following the final disposition of any previous petition and subsequent appeal by the patient." On the other hand, every few years, any given patient *must* be assessed: "The head of the state-operated treatment program or head of the treatment facility must schedule a hearing before the special review board for any patient who has not appeared before the special review board in the previous three years, and schedule a hearing at least every three years thereafter." *Id.*[4]

Under § 253B.18, subd. 7(a), "[a] patient who is a person who has a mental illness and is dangerous to the public shall not be provisionally discharged unless it appears to the satisfaction of the commissioner, after a hearing and a favorable recommendation by a majority of the [SRB], that the patient is capable of making an acceptable adjustment to open society." Similarly, as to full discharge, "[a] patient who is a person who has a mental illness

---

[3]   "The board shall consist of three members experienced in the field of mental illness. One member of each special review board panel shall be a psychiatrist or a doctoral level psychologist with forensic experience and one member shall be an attorney. No member shall be affiliated with the Department of Human Services." Minn. Stat. § 253B.18, subd. 4c.

[4]   This provision went into effect on January 1, 2016. *See* Act of May 22, 2015, 2015 Minn. Sess. Law Serv. ch. 71, § 19 (West).

3

and is dangerous to the public shall not be discharged unless it appears to the satisfaction of the commissioner, after a hearing and a favorable recommendation by a majority of the [SRB], that the patient is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of treatment and supervision." *Id.* subd. 15(a).

Section 253B.19 provides for judicial review for patients who disagree with petition decisions. Subdivision 1 tasks the Minnesota Supreme Court with establishing a "judicial appeal panel"; under subdivision 2(a), a committed patient can "petition" that panel "for a rehearing and reconsideration" of a decision on a reduction-in-custody petition. Subdivisions 2(b) and 2(c) establish various procedural requirements for petitions to the appeal panel. Of particular note, subdivision 2(c) establishes the burden of production and burden of proof:

> The petitioning party seeking discharge or provisional discharge bears the burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief. If the petitioning party has met this burden, the party opposing discharge or provisional discharge bears the burden of proof by clear and convincing evidence that the discharge or provisional discharge should be denied.

Finally, subdivision 5 gives patients a path to challenge the judicial appeal panel's own decisions: "A party aggrieved by an order of the appeal panel may appeal from the decision of the appeal panel to the court of appeals as in other civil cases."

### B. Mr. Opiacha's Commitment History

As relevant here, Mr. Opiacha's commitment history begins in August 2013, when authorities petitioned the Hennepin County District Court to commit Mr. Opiacha as having

4

a mental illness and being dangerous to the public. *See* Order for Commitment as Mentally Ill and Dangerous 1, *In re Civil Commitment of Opiacha*, No. 27-MH-PR-13-906 (Minn. Dist. Ct. Nov. 5, 2013) (DA1).[5] After an October 2013 hearing, the state court ordered that Mr. Opiacha be committed to the MSH. *See id.* at 6 (DA6). Under Minn. Stat. § 253B.18, subd. 2(a), the MSH prepared a written treatment report for Mr. Opiacha, and the Hennepin County District Court held a final-determination hearing in August 2014. *See* Am. Order for Indeterminate Commitment as a Person Mentally Ill and Dangerous 1, *In re Civil Commitment of Opiacha*, No. 27-MH-PR-13-906 (Minn. Dist. Ct. Sept. 12, 2014) (DA12). In September 2014, the state court held that Mr. Opiacha "continue[d] to be a person mentally ill and dangerous to the public" and ordered him committed to the MSH "for an indeterminate period of time." *Id.* at 5 (DA16). Mr. Opiacha did not appeal this indeterminate civil commitment. *See* Ans. 6.

Since being committed, Mr. Opiacha has sought full discharge from MSF twice. In December 2016, Mr. Opiacha filed a petition for a full discharge. *See* Order 1, *In re Civil Commitment of Opiacha*, No. AP17-9071 (Minn. Jud. Appeal Panel Nov. 29, 2017) (DA106). An SRB held a hearing and denied Mr. Opiacha's request in April 2017. *See id.* Mr. Opiacha filed a petition for rehearing and reconsideration with the State's judicial appeal panel, which denied Mr. Opiacha's discharge request in November 2017. *See id.* at 1, 4 (DA106, DA109). Mr. Opiacha tried to appeal that decision to the Minnesota Court of Appeals under Minn. Stat. § 239B.19, subd. 5, but failed to get past certain procedural hurdles, leading to a

---

[5]  Parenthetical references to "DA__" refer to the pages in Respondent's Appendix (ECF No. 11-1).

dismissal of his appeal without consideration of the merits. *See* Order, *In re Civil Commitment of Opiacha* 1–2, No. A18-0156 (Minn. Ct. App. Feb. 26, 2018) (DA123–24); Order, *In re Civil Commitment of Opiacha* 1, No. A18-0156 (Minn. Apr. 25, 2018) (DA133) (denying petition for further review to Minnesota Supreme Court).

In April 2018, Mr. Opiacha filed a petition seeking either a transfer to a different facility, provisional discharge, or full discharge. *See* Order & Mem., *In re Civil Commitment of Opiacha* 3, No. A18-9135 (Minn. Jud. Appeal Panel Sept. 26, 2019) (DA256). An SRB recommended denying those requests in August 2018, and the Department of Human Services followed that recommendation in a September 2018 order. *See id.* Mr. Opiacha again petitioned the State's judicial appeal panel for rehearing and reconsideration, and in September 2019 the panel again denied petition in an order dated September 26, 2019. *See id.* at 1–2 (DA254–55). Mr. Opiacha appealed the panel's determination to the Minnesota Court of Appeals. This time, the Court of Appeals considered his appeal on the merits and affirmed the panel's decision. *See In re Civil Commitment of Opiacha*, 943 N.W.2d 220, 222 (Minn. Ct. App. 2020). Mr. Opiacha did not petition the Minnesota Supreme Court for further review.

### C.    The Present Petition

This background brings us to the present action. Mr. Opiacha began this action by filing a template civil-action complaint; the pleading named as defendants the "DHS State Hospital" and three individuals who presumably worked there. *See* Compl., ECF No. 1. In an order dated August 11, 2020, the Court observed that Mr. Opiacha's complaint appeared to be frivolous, given that it lacked allegations explaining what any of the individual

6

defendants did that caused him harm. *See* Order 3–4, ECF No. 3. The Court thus ordered Mr. Opiacha to file an amended complaint. *See id.* at 4. In a footnote, the Court observed that the complaint did not seek Mr. Opiacha's release, and that if Mr. Opiacha did in fact seek release, "he should instead file a petition for a writ of habeas corpus." *Id.* at 5 n.2.

Apparently responding to the Order, Mr. Opiacha submitted a pair of letters that each requested Mr. Opiacha's release from confinement based on the confinement being unconstitutional. *See* Letter 7 (ECF No. 4); Letter 1–2 (ECF No. 5). In an order dated November 6, 2020, the Court concluded that Mr. Opiacha "wants the sort of relief afforded by habeas proceedings." Order 3, ECF No. 6. Because his letters did not "substantially comply with Rule 2 of the Rules Governing Section 2254 Cases in the U.S. District Courts," the Court ordered Mr. Opiacha to submit an amended pleading that did. *Id.* at 5. The Court also had the Clerk of Court send Mr. Opiacha a copy of the District's standard form for § 2254 petitions. *Id.* at 5 n.2.

On November 20, 2020, Mr. Opiacha submitted the present Petition. The Court ordered Respondent to file an answer to the Petition, and indicated that if Mr. Opiacha wished to file a reply, he should do so within 30 days of the answer's filing. Respondent filed the Answer on March 11, 2021. *See* Ans. Mr. Opiacha's reply deadline passed in April 2021, and he never filed a formal reply, though he did file a letter that this Court has reviewed as part of preparing this Report and Recommendation. *See* Letter, ECF No. 9 ("Feb. 2021 Letter"). The Petition is therefore fully briefed and ready for review.

7

## II.    ANALYSIS

### A.    Preliminary Construction Questions

Under 28 U.S.C. § 2254(a), a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[6] To analyze the Petition, then, the Court must identify just what judgment (or judgments) Mr. Opiacha is challenging, and also identify why he believes that his custody under that judgment (or judgments) violates the Constitution and/or federal law.

Noting that Mr. Opiacha's Petition is hard to understand, *see, e.g.*, Ans. 12–14, Respondent presents its view on both questions. With respect to the judgments being challenged, Respondent claims that Mr. Opiacha could be referring to three different "commitment-related state proceedings": (1) the proceedings leading to his initial "indeterminate commitment"; (2) the proceedings denying his first request for discharge; and/or (3) the proceedings denying his second request for discharge. As to why Mr. Opiacha's custody is unlawful, Respondent construes Mr. Opiacha to make three arguments: (1) that under the Fourteenth Amendment, it is unlawful to sentence Mr. Opiacha for an indeterminate period; (2) that Mr. Opiacha "has adjusted to an institutionalized setting without showing aggression," suggesting that he could be released without presenting a

---

[6]    Federal habeas corpus review is available to challenge state-court orders placing someone into civil commitment. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 176 (2001); *Favors v. Jesson*, No. 14-CV-3473 (JRT/LIB), 2015 WL 4919969, at *6 (D. Minn. Aug. 12, 2015) (quoting *Duncan*).

8

danger to the public; and (3) that civil commitment is a treatment for sex offenders, and so is inappropriate given that Mr. Opiacha is not a sex offender. *Id.* at 13 & n.4.

In the February 2021 Letter, Mr. Opiacha does not directly challenge Respondents' characterizations of the relevant proceedings or his arguments as to why his custody is unlawful. *See* Feb. 2021 Ltr. Mr. Opiacha does suggest, however, that it is "cruel[] and unusual[]" for him to be committed as long as he has. *Id.* In an abundance of caution, the Court will treat this as a fourth argument as to why Mr. Opiacha believes his present confinement is unlawful.

### B. Proceedings Establishing Mr. Opiacha's Present Custody

As Respondent notes, one question concerning the Petition is just which judgments Mr. Opiacha challenges. Respondent provides numerous arguments why this Court should not address potential challenges to the proceedings leading to Mr. Opiacha's original indeterminate commitment, as well as the proceedings denying his first discharge request. In the Court's view, however, those challenges are immaterial; Mr. Opiacha is no longer in custody based on those proceedings.

As noted above, a petitioner raising a § 2254 petition must be in custody "pursuant to a judgment of a State court." 28 U.S.C. § 2254(a). The Supreme Court has explained that a § 2254 applicant "'seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement.'" *Magwood v. Patterson*, 561 U.S. 320, 332 (2010) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005) (emphasis in *Magwood* removed)). In this case, Mr. Opiacha is not plausibly in custody because of the proceeding leading to his original indeterminate commitment. Since then, he has pursued full discharge twice—each time unsuccessfully—

and the process for reviewing these requests applies the same standard used to decide whether indeterminate commitment is itself appropriate.[7] These later proceedings thus supersede their predecessors. Facing the question of what proceedings underpin Mr. Opiacha's present confinement, the correct answer is that he is in custody only on the basis of the proceedings denying his second discharge request.[8]

### C.   Challenges to Custody Based on Second Discharge Request

The above discussion establishes that Mr. Opiacha is presently "in custody" under only one set of state-court proceedings: those associated with his second discharge request. Respondent contends that Mr. Opiacha has failed to exhaust his state-court remedies with respect to these proceedings. *See* Ans. 21–22. The Court agrees.

Under 28 U.S.C. § 2254(b)(1)(A), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."[9] In the Minnesota court system, exhaustion requires that a petitioner press his or

---

[7]   *Compare* Minn. Stat. § 253B.18, subd. 1 (stating that initial commitment requires court to find "by clear and convincing evidence that the proposed patient is a person who has a mental illness and is dangerous to the public") with *id.* § 253B.19, subd. 2(c) (stating that when patient appeals negative discharge petition to State's judicial appeal panel, "the party opposing discharge or provisional discharge bears the burden of proof by clear and convincing evidence that the discharge or provisional discharge should be denied").

[8]   The requirement that a patient go before the SRB for review once every three years, *see* Minn. Stat. § 253B.18, subd. 5(a), further establishes that Mr. Opiacha is not in custody based on the proceedings leading to his initial indeterminate confinement.

[9]   Under 28 U.S.C. § 2254(b)(1)(B)(i)–(ii), a § 2254 applicant can proceed without having exhausted state-court remedies if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." But the burden of showing that one of these provisions applies rests with a petitioner. *See, e.g.*, *Meador v. Branson*, 688 F.3d 433, 435 (8th Cir. 2012) (citing *Gentry v.*

10

her claims to the Minnesota Supreme Court. *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[A] prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review) . . . ."); *Fraction v. Minnesota*, 678 F. Supp. 2d 908, 916 (D. Minn. 2008).

As discussed above, the proceedings over Mr. Opiacha's second discharge request culminated in the Minnesota Court of Appeals addressing on the merits Mr. Opiacha's challenge to the decision of the State's judicial appeal panel. *See In re Opiacha*, 943 N.W.2d at 222. After the Court of Appeals entered its order, however, there is no indication that Mr. Opiacha sought further review from the Minnesota Supreme Court. This means that Mr. Opiacha did not fairly present *any* issues concerning his second discharge request.

A federal claim not fairly presented to the reviewing state court may be either unexhausted or procedurally defaulted. A claim is *unexhausted* when it has not been fairly presented in a complete round of the state's established appellate review process, *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999), but the prisoner still has the right under state law to raise the claim by an available procedure, 28 U.S.C. § 2254(c). On the other hand, a claim is *procedurally defaulted* when it has not been fairly presented in the state courts, and the state courts will no longer review it because an "independent and adequate state procedural rule" precludes further litigation. *Coleman v. Thompson,* 501 U.S. 722, 749–50 (1991).

---

*Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999)). Mr. Opiacha does not suggest that either applies here. *See generally* Pet. (displaying no attempt to show that § 2254(b)(1)(B) applies); Letter (same).

11

Here, there is just such a procedural rule. As Respondent observes, Mr. Opiacha's deadline for petitioning the Minnesota Supreme Court for further review of the relevant Court of Appeals's decision was May 14, 2020—30 days after the Court of Appeals issued its decision. That deadline has long passed, so any challenge Mr. Opiacha might wish to make concerning his second discharge request is procedurally defaulted. This procedural default bars federal habeas review of those challenges. *See, e.g., id.* at 750; *Thomas v. Payne*, 960 F.3d 465, 471 (8th Cir. 2020) (quoting *Coleman*).

The Court therefore recommends denying Mr. Opiacha's Petition as to any challenges to the proceedings concerning his second discharge request. Because those proceedings are the only proceedings that establish Mr. Opiacha's present custody, the result is that the Court recommends denying the Petition in its entirety.

### D. Certificate of Appealability

A § 2254 petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A court may not grant a COA unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Furthermore, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim"—as here— "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, it is highly unlikely that any other court, including the Eighth Circuit, would treat the Petition differently than this Court is treating it here. The Court therefore recommends not granting a COA in this matter.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Leon Opiacha's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 7 ("Petition") be DENIED.

2. No certificate of appealability be issued.

Date: July 14, 2021

*s/ Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).